STATE OF NORTH CAROLINA v. JARED LEE PUGH

No. COA99-673

(Filed 16 May 2000)

**1. Witnesses— child—competency to testify**

The juvenile court abused its discretion by finding a four-year-old victim incompetent to testify and by thereafter admitting hearsay statements of the victim under the residual hearsay exception of N.C.G.S. § 8C-1, Rule 803(24), because the voir dire was insufficient to allow the juvenile court to determine whether the victim was incapable of expressing herself concerning the matter or incapable of understanding the duty to tell the truth.

**2. Sexual Offenses— first-degree sexual offense—indecent liberties—motion to dismiss—sufficiency of evidence**

The juvenile court did not err by denying the juvenile's motions to dismiss first-degree sexual offense and indecent liberties charges because the testimony of the minor victim's treating physician, a protective services investigator, an investigator with child protective services, an officer, and a detective were sufficient to withstand this motion.

**3. Sexual Offenses— first-degree sexual offense—indecent liberties—burden of proof—beyond a reasonable doubt**

The juvenile court did not err in finding that the State had proven the charges of first-degree sexual offense and indecent

liberties beyond a reasonable doubt because: (1) the trial court acted as the trier of fact in this case, empowering it to assign weight to the evidence; and (2) the trial court's findings were supported by competent evidence, and were therefore binding on appeal even if there is evidence to the contrary.

Judge TIMMONS-GOODSON concurring in part and dissenting in part.

Appeal by juvenile-respondent from an adjudication and disposition order entered 23 March 1999 by Judge Ernest J. Harviel in Alamance County District Court. Heard in the Court of Appeals 14 March 2000.

*Attorney General Michael F. Easley, by Assistant Attorney General Jane Rankin Thompson, for the State.*

*Walker & Bullard, by Daniel S. Bullard, for respondent-appellant.*

WALKER, Judge.

The juvenile-respondent (juvenile) was adjudicated delinquent for committing a first degree sexual offense, indecent liberties, and assault inflicting serious injury on a child under the age of sixteen. After a dispositional hearing, the juvenile court ordered the juvenile to be placed in a residential training school facility for a period not to exceed his eighteenth birthday and to complete the sex offender treatment program.

At the adjudicatory hearing, the State's evidence tended to establish the following: In May 1998, D.R., age 4, moved into the residence of Amy Cruz. Also living in the residence was Ms. Cruz's boyfriend and her two sons, one of which is the juvenile, age 13. Prior to May 1998, D.R. had lived in Durham County, where she was physically abused by the husband of her biological mother. On 8 December 1998, at approximately 8:00 p.m., Ms. Cruz left her home to pick up her son, T.J., from basketball practice and was gone from the residence for about 30 minutes. During this time, the juvenile was alone with D.R., and he admitted striking her with an electrical cord.

At the outset of the hearing, the State called D.R. to testify. After asking D.R. five questions, the juvenile judge found that "[b]ased on the observations of the demeanor of the victim child and her answers

and the lack thereof to the questions propounded to her, the Court finds as a Matter of Law that she is not competent to testify."

The State then called Dr. Diane Duffey, a pediatrician at Burlington Pediatrics as an expert in the field of medicine with a specialty in pediatrics and child abuse. Dr. Duffey testified that she examined D.R. on 14 December 1998 and found that D.R. had multiple bruises on her face, arms, and legs and that her eyes were "swollen shut and very bloodshot." When Dr. Duffey asked D.R. what happened to her eyes, D.R. answered, "I fell out a van." When asked about the bruises on her legs, D.R. stated that her brother, the juvenile, had hit her with an electrical cord when her mother, Ms. Cruz was not at home. D.R. denied that anything had happened to her vaginal area, but Dr. Duffey's vaginal examination of D.R. revealed "a hymen that had a notch, or a tear between 12:30 and 1 o'clock, with some thickening of the hymen between two and three o'clock" and "a bluish color to her labia and a small ulceration," indicating that she had been sexually abused or "had penetrating injury to her vaginal area." Dr. Duffey further testified that when she examined D.R. in October and November 1998, her vaginal examinations were normal.

On cross-examination, Dr. Duffey was of the opinion that, based on the discoloration of the bruises, the vaginal injuries and the bruises to D.R.'s eyes did not occur more than five days before her examination. On redirect, Dr. Duffey admitted that "dating the ages of bruises" is not exact but depends on other factors such as the "overall health of the individual, the nutritional status, etc."

Cathy Barrow, a protective services investigator with Alamance County Department of Social Services (D.S.S.), testified that she responded to a call from Alamance Regional Medical Center on 12 December 1998 regarding D.R.'s injuries. Ms. Barrow observed D.R.'s injuries and spoke with a doctor and D.R. regarding her injuries. Ms. Barrow testified that D.R. informed her that the juvenile had hit her with a cord. Later that day, Ms. Barrow interviewed the juvenile, who admitted hitting D.R. with a cable wire or cord approximately five times, but denied touching D.R. in her private parts.

Mary Lynn Needham, an investigator with child protective services in Alamance County, testified that she scheduled the medical examination with Dr. Duffey on 14 December 1998 and interviewed D.R. on 15 December 1998. Also present during the 15 December 1998 interview was Janet Fuquay, who is employed by the Youth Division of the Alamance County Sheriff's Department. Both Ms. Needham and

Ms. Fuquay testified that during the 15 December 1998 interview, D.R. stated that the juvenile hit her in the face and hurt her vagina with a white stick. D.R. was interviewed again on 29 January 1999, after which Ms. Needham and Ms. Fuquay took her to the bathroom. Ms. Needham and Ms. Fuquay testified that while D.R. was in the bathroom, she removed a toilet paper spindle from its holder and told them that the juvenile had used one of these to hurt her vagina. On cross examination, Ms. Needham admitted that D.R. had been the subject of another D.S.S. investigation in May 1998, based on an allegation of sexual abuse when she lived with her biological mother in Durham County. D.R. had stated that "a man named Charles had touched her coocoo" but the report was unsubstantiated.

Danny Walker, a detective with the Alamance County Sheriff's Department, testified that he began his investigation on 12 December 1998 and that he was present with Ms. Fuquay during the 29 January 1999 interview of D.R. Detective Walker further testified that during this interview, D.R. stated that the juvenile hurt her vaginal area with a stick while she was in the bathroom and that this occurred the same day that the juvenile hit her with the cord. Detective Walker interviewed the juvenile on 14 December 1998, and during this interview, the juvenile admitted hitting D.R. at least five times on her legs and buttocks with a cord while he was babysitting her on 8 December 1998, because she would not listen to him. The juvenile denied inserting any object into her vagina.

During the adjudication hearing, the juvenile testified that he had a good relationship with D.R., but admitted hitting her legs about five times with a cord on 8 December 1998. The juvenile denied sexually abusing D.R. or hitting her in the face. Alicia Cox, the youth director at Nall Memorial Baptist Church, testified that the juvenile was an active member of the youth group at church and had made a commitment to abstain from sex until marriage. She further testified that the juvenile appeared to have a good relationship with D.R. and that she trusted him with her own small child. Sara Elizabeth Mowery, the juvenile's grandmother, also testified that the juvenile was a "good boy" and had never done anything that would cause her to believe that he might have the propensity toward engaging in a sexual offense. Ms. Mowery further testified that the juvenile told her "the only thing that he did was hit her with that cord."

The juvenile assigns as error the juvenile court's: (1) finding that D.R. was incompetent to testify and thereafter admitting the hearsay

statements of D.R. under N.C. Gen. Stat. § 8C-1, Rule 803(24); (2) denying his motions to dismiss the first degree sexual offense and indecent liberties charges since there was insufficient evidence; and (3) finding that the State had proven the charges of first degree sexual offense and indecent liberties beyond a reasonable doubt.

[1] The juvenile first contends that the juvenile court erred in finding D.R. incompetent to testify and thereafter admitting hearsay statements of D.R. under the residual hearsay exception, N.C. Gen. Stat. § 8C-1, Rule 803(24). The juvenile argues that the trial court failed to consider the six inquires as required by *State v. Smith*, 315 N.C. 76, 92, 337 S.E.2d 833, 844 (1985). In *Smith*, our Supreme Court held that prior to admitting or denying proffered hearsay evidence pursuant to Rule 803(24), the trial court must determine that: (1) proper written notice was given to the adverse party; (2) the hearsay statement is not specifically covered by any other hearsay exception; (3) the proffered statement possesses circumstantial guarantees of trustworthiness; (4) the proffered evidence is offered as evidence of a material fact; (5) the proffered evidence is more probative on the point for which it is offered than any other evidence which the proponent can procure through reasonable efforts; and (6) the proffered evidence will best serve the general purposes of the rules of evidence and the interests of justice. *Id.* at 92-97, 337 S.E.2d at 844-847.

The juvenile contends that only the second and fourth elements set forth above were satisfied and that the remaining four elements were not met. Specifically, the juvenile argues that the fifth element from *Smith* was not satisfied since the hearsay statements of D.R. are not more probative on the issue for which they were offered than other evidence the State could procure since D.R. was competent to testify. According to the juvenile, the juvenile judge improperly found that D.R. was incompetent to testify where she had correctly answered four out of the five questions he asked. Furthermore, the juvenile contends that D.R.'s failure to answer the fifth question does not indicate she is incompetent to testify since it is natural for a four-year-old to be confused when asked how she is related to her foster mother.

The general rule is that every person is competent to be a witness unless the trial court determines that he or she is disqualified under the rules of evidence. *State v. Spaugh*, 321 N.C. 550, 364 S.E.2d 368 (1988). Rule 601(b) provides: "A person is disqualified to testify as a witness when the court determines that he is (1) incapable of

expressing himself concerning the matter as to be understood . . ., or (2) incapable of understanding the duty of a witness to tell the truth." N.C. Gen. Stat. § 8C-1, Rule 601(b) (Cum. Supp. 1998). "There is no age below which one is incompetent, as a matter of law, to testify." *State v. Turner*, 268 N.C. 225, 230, 150 S.E.2d 406, 410 (1966); *See also State v. Rael*, 321 N.C. 528, 364 S.E.2d 125 (1988) (holding that the trial court properly found a four-year-old victim competent to testify). The issue of competency of a witness rests in the sound discretion of the trial court based upon its observation of the witness. *State v. Hicks*, 319 N.C. 84, 89, 352 S.E.2d 424, 426 (1987). A decision will not be disturbed on appeal unless there is a showing that the trial court's ruling as to competency could not have been the result of a reasoned decision. *Id.*

Here, after D.R. was called by the State to testify, the following exchange occurred:

COURT: . . . Mr. Morris, you've alleged that [D.R.] is how old, four?

MR. MORRIS: (prosecutor): Four years old, Your Honor.

COURT: And she appears to be four. Are you calling her as a witness?

MR. MORRIS: Yes, sir, Your Honor.

COURT: Do you believe that she is contending that she is competent to testify?

MR. MORRIS: I'm going to try to establish that she's competent to testify; but in the event that the Court finds that she's not, I have filed and served a notice of my intent to use hearsay evidence in this case on Mr. Bullard.

COURT: Well, at one time there was a common law presumption that anyone under the age of six was not competent to testify. Does that still exist?

MR. MORRIS: No, sir. I believe the latest or one of the later cases, . . ., indicates that the law in this State is there is no age below which a child could not be competent to testify. It's an individual determination based on the child and the observation the Court makes about the child's ability to understand the nature of the oath and be able to communicate about the incident.

COURT: If you'll have her come up and have a seat here. Her mother can come with her, and I'll ask her the questions.

**STATE v. PUGH**

[138 N.C. App. 60 (2000)]

At that time, D.R. came forward with her foster mother and sat at the witness stand on her foster mother's lap. The juvenile judge then asked and D.R. answered the following questions:

COURT: [D.R.], how old are you sweetheart?

D.R.: Four.

COURT: Four. Do you go to school? And where do you go to school?

D.R.: North Graham.

COURT: And North Graham. Is that what you said? Are you in kindergarten? Do you know what kindergarten is?

D.R.: Yes.

COURT: And who is that you're with? Who's this lady?

D.R.: Margaret.

COURT: Are y'all related?

D.R.: Yes.

COURT: Do you know? How are you related to her? Thank you. You may step down. She may return to the room from which she [came]. Very well. In this case, based on my observation of the demeanor of the child, of her answers and lack thereof to the questions that I propounded to her, I'm finding as a matter of law that she is not competent to testify.

The juvenile's attorney then asked that the record reflect that D.R. is "probably unable to answer because she is of no relation. That was her foster mother. So I would, there would naturally, we contend, be some confusion from a four year old about [that]." The juvenile judge asked, "Do you believe four year olds are competent? Do you think she's, are you saying you think she's competent to testify?" The juvenile's attorney answered that he could not tell.

Based on the exchange between the juvenile court and D.R., we conclude that the juvenile court disqualified D.R. without making an appropriate inquiry into her competency to testify. This *voir dire* was insufficient to allow the juvenile court to determine whether D.R. was incapable of expressing herself concerning the matter or incapable of understanding the duty to tell the truth. Therefore, we remand this

case to the juvenile court for further findings after a proper inquiry of D.R.'s competency to testify.

**[2]** The juvenile next contends that the juvenile court erred in denying his motions to dismiss the first degree sexual offense and indecent liberties charges at the end of the State's evidence and again at the close of all of the evidence since there was insufficient evidence. In order to withstand a motion to dismiss the charges contained in a juvenile petition, there must be substantial evidence of each of the material elements of the offense charged. *In re Bass*, 77 N.C. App. 110, 334 S.E.2d 779 (1985). On review, the evidence must be considered in the light most favorable to the State, and the State is entitled to every reasonable inference of fact which may be drawn from the evidence. *Id.*

Here, the juvenile court found that D.R. was incompetent to testify and admitted her hearsay statements pursuant to N.C. Gen. Stat. § 8C-1, Rule 803(24). The State presented the testimony of D.R.'s treating physician, a protective services investigator with the Alamance County D.S.S., an investigator with child protective services in Alamance County, an officer with the Youth Division of the Alamance County Sheriff's Department, and a detective with the Alamance County Sheriff's Department. Viewed in the light most favorable to the State, the State's evidence was sufficient to withstand the juvenile's motion to dismiss.

**[3]** The juvenile also contends that the juvenile court erred in finding that the State had proven the charges of first degree sexual offense and indecent liberties beyond a reasonable doubt. N.C. Gen. Stat. § 7A-635 (1995) (repealed 1 July 1999) provides that the "allegations of a petition alleging the juvenile is delinquent shall be proved by a reasonable doubt." "When the trial court is the trier of fact, the court is empowered to assign weight to the evidence presented at the trial as it deems appropriate." *In re Oghenekevebe*, 123 N.C. App. 434, 439, 473 S.E.2d 393, 397-398 (1996). "In this situation, the trial judge acts as both judge and jury, thus resolving any conflicts in the evidence." *Id.* "If there is competent evidence to support the trial court's findings of fact and conclusions of law, the same are binding on appeal even in the presence of evidence to the contrary." *Id.*

In the case at bar, the juvenile court stated that "[a]fter hearing all the evidence presented, the Court finds that the State has met its burden of proof beyond a reasonable doubt. . . ." A careful review of the record reveals that the trial court's finding was supported by

competent evidence. *See In re Phillips*, 128 N.C. App. 732, 497 S.E.2d 292, *disc. review denied*, 348 N.C. 283, 501 S.E.2d 919 (1998).

In summary, we affirm the juvenile court's finding that the juvenile committed an assault inflicting serious injury. We remand to the juvenile court, for a determination consistent with this opinion, the issue of D.R.'s competency to testify. If, after conducting an appropriate *voir dire* of D.R., the juvenile court determines that D.R. is incompetent to testify, the adjudicatory and dispositional order filed 23 March 1999 is affirmed. If, however, after proper inquiry, the juvenile court determines that D.R. is competent to testify, the juvenile shall be entitled to a new adjudicatory hearing on the charges of first degree sexual offense and indecent liberties.

Affirmed in part and remanded in part.

Judge GREENE concurs.

Judge TIMMONS-GOODSON concurs in part and dissents in part.

Judge TIMMONS-GOODSON concurring in part and dissenting in part.

I agree with the majority that the trial court erred in determining that the child was not competent to testify based on the inadequate inquiry. However, I disagree that the error can be cured by conducting a new competency hearing and, in the event that the trial court determines anew that the child is incompetent to testify, retroactively applying the new determination to the former hearing. I believe that the juvenile is entitled to a new trial on the charges of first degree sexual offense and indecent liberties.

Specifically, I disagree with that portion of the majority opinion which concludes:

We remand to the juvenile court, for a determination consistent with this opinion, the issue of D.R.'s competency to testify. If, after conducting an appropriate *voir dire* of D.R., the juvenile court determines that D.R. is incompetent to testify, the adjudicatory and dispositional order filed 23 March 1999 is affirmed. If, however, after proper inquiry, the juvenile court determines that D.R. is competent to testify, the juvenile shall be entitled to a new adjudicatory hearing on the charges of first degree sexual offense and indecent liberties.

STATE v. PUGH

[138 N.C. App. 60 (2000)]

Whether a witness is qualified to testify is a preliminary question. N.C. Gen. Stat. § 8C-1, Rule 104(a) (1999). As such, I do not believe it would be proper, as the majority suggests, to conduct such an inquiry following the trial. To affirm the 23 March 1999 order if the child is found, over one year later, to be incompetent to testify is to place the proverbial cart before the horse. This is especially true in a case involving a young child who experiences significant developmental changes within a short time span.

After the trial court determined that the juvenile was not competent to testify at trial, the State offered the testimony of witnesses regarding out of court statements made by the child. The juvenile court may not admit proffered hearsay evidence without making a preliminary determination that such evidence is "more probative on the issue than any other evidence which the proponent can procure through reasonable efforts[.]" *Smith*, 315 N.C. at 95, 337 S.E.2d at 846. I agree with the majority's conclusion that "the juvenile court disqualified D.R. without making an appropriate inquiry into her competency to testify." Having failed to satisfy the threshold test set forth in *Smith*, the trial court erred in admitting the hearsay statements of D.R. under the residual hearsay exception, section 8C-1, Rule 803(24).

The hearsay statements which the trial court improperly admitted were highly prejudicial in that they identified the juvenile as the perpetrator and included descriptions of the injuries he allegedly inflicted on D.R. *See State v. Fearing,* 315 N.C. 167, 172, 337 S.E.2d 551, 554 (1985).

In *Fearing*, our Supreme Court held that the trial court improperly concluded that a child victim was incompetent to testify where the trial court judge had not personally observed the child's demeanor, but had instead adopted counsel's stipulation that the child was incompetent to testify. Because the trial court relied on the improperly based conclusion that the child was not competent to testify in admitting prejudicial hearsay testimony, the *Fearing* court arrested the convictions for rape, incest, and indecent liberties with a minor and remanded the matter to the Superior Court for a new trial.

In the case at bar, in light of the fact that highly prejudicial testimony was erroneously admitted on the basis of the improper conclusion regarding the competency of the child to testify, I would hold that the interests of justice require a new trial.