Belknap
No. 99-357

THE STATE OF NEW HAMPSHIRE

v.

DONALD CARTER

May 1, 2001

*Philip T. McLaughlin*, attorney general (*N. William Delker*, assistant attorney general, on the brief and orally), for the State.

*Carl D. Olson*, assistant appellate defender, of Littleton, by brief and orally, for the defendant.

DALIANIS, J. The defendant, Donald Carter, appeals an order of the Superior Court (*Smukler*, J.) denying his motion for modification of sentence. We affirm.

The relevant facts follow. In April 1996, the trial court sentenced the defendant to seven and one-half to fifteen years in the State Prison for aggravated felonious sexual assault. The court deferred the sentence for two years, ordering the defendant to undergo sex offender treatment during this period. In July 1998, the court imposed the deferred sentence, adding that the defendant could petition the court for suspension of the balance of the minimum sentence if he successfully completed the sexual offender program (SOP) while incarcerated.

In November 1998, the director of the SOP, Lance Messenger, conducted an evaluation of the defendant for admission into the SOP. Admission is conditioned upon three broad criteria: (1) the offender needs to accept full responsibility for all of his offending behavior; (2) he needs to recognize that he has a serious problem; and (3) he must be committed and motivated in working to change his behavior. During his evaluation, the defendant admitted to the sexual abuse for which he was charged. He did not, however, admit to allegations that he had sexually abused his daughter, an allegation for which the

defendant has not been prosecuted. Messenger denied the defendant admission to the SOP because of his failure to discuss these allegations.

After serving only one and one-half years, the defendant filed a motion for modification of his sentence, requesting that the court allow him to petition for a reduction of his minimum sentence. He argued that because he was denied admission to the SOP, he was precluded from petitioning for a sentence reduction upon successful completion of the SOP. The court denied his motion and this appeal followed. On appeal, the defendant argues that requiring him to admit to offenses that could subject him to criminal prosecution as a prerequisite to admission to the SOP, without immunity, violates his right against compelled self-incrimination as prohibited by the Fifth Amendment to the United States Constitution.

Initially, we must establish the framework for our analysis. Although the defendant asserted a State constitutional claim in the trial court, and further relies upon New Hampshire case law in his brief, *see Knowles v. Warden, N.H. State Prison*, 140 N.H. 387 (1995), he cites only to the Federal Constitution. Because he does not invoke a specific provision of the State Constitution on appeal, we limit our analysis to the Federal Constitution. *See State v. Dellorfano*, 128 N.H. 628, 632-33 (1986).

■ "The Fifth Amendment protects against compelled self-incrimination." *Ohio Adult Parole Authority v. Woodard*, 523 U.S. 272, 286 (1998). This protection

> not only permits [the defendant] to refuse to testify against himself at a criminal trial in which he is a defendant, but also privileges him not to answer official questions put to him in any other proceeding, civil or criminal, formal or informal, where the answers might incriminate him in future criminal proceedings.

*Minnesota v. Murphy*, 465 U.S. 420, 426 (1984) (quotation omitted). "[A] state may not impose substantial penalties on a person who decides to invoke his rights against self-incrimination." *Doe v. Sauer*, 186 F.3d 903, 906 (8th Cir. 1999).

■ Here, because the SOP is a voluntary program, the defendant is not being compelled to incriminate himself: he may choose not to participate and thus not admit any guilt. *See Knowles*, 140 N.H. at 392. By refusing to comply with the requirements for admission into the SOP, the defendant made a tactical choice not to participate in the SOP. Such a tactical choice does not rise to the level of

compulsion required for a Fifth Amendment violation. *Cf. Ohio Adult Parole Authority*, 523 U.S. at 286-88 (voluntary clemency proceeding for death penalty allowing defendant's refusal to answer questions to be used against him did not result in impermissible compelled self-incrimination).

The defendant, however, asserts that requiring disclosure of all prior sexual offenses presents him with the choice to either incriminate himself or suffer the substantial penalty of foregoing his right to seek a suspension of the balance of the minimum portion of his sentence. He further contends that by invoking his privilege against self-incrimination, he also suffers the penalties of a higher custody status and restricted program options. Thus, he argues that such a Hobson's choice violates his right against compelled self-incrimination as protected by the Fifth Amendment. We disagree.

The defendant did not suffer any additional penalties as a result of his refusal to admit the allegations of sexual abuse against his daughter; he is merely required to serve the term of imprisonment imposed by the court. The defendant has no automatic right to early release from his sentence. *See Greenholtz v. Nebraska Penal Inmates*, 442 U.S. 1, 9 (1979). At his sentencing hearing, the court gave him only a possibility of completing his sentence at an earlier date. Such a possibility of early release does not compel the defendant to incriminate himself. *See Doe*, 186 F.3d at 906. The defendant "may choose not to participate in the SOP. Accordingly, the compulsion element of a violation of his privilege against compelled self-incrimination is missing: he may choose not to admit his guilt." *Knowles*, 140 N.H. at 392. Thus, that the defendant had the hope of early release should he complete the SOP does not transform his choice not to admit guilt into a penalty for exercising his right against self-incrimination.

The defendant contends that this case is distinguishable from *Knowles*. In *Knowles*, a prisoner argued that requiring him to participate in the SOP as a condition to parole eligibility violated his right against compelled self-incrimination because admission into the SOP required him to admit guilt for the crimes for which he was convicted. *Id.* at 388-89. We held that such a requirement did not violate the prisoner's right against compelled self-incrimination under either the State or Federal Constitutions. *Id.* at 391. Here, the defendant argues that this case is distinguishable because his admission into the SOP would require him to admit to all of his offending behavior, including behavior for which he has not yet been prosecuted or convicted. This, however, is a distinction without a difference. Regardless of whether the defendant has been prose-

cuted for offending behavior, he is not forced to participate in the SOP; thus, the element of compulsion required for a violation of the right against self-incrimination is lacking.

■ Further, the defendant's argument that he suffered higher custody status and reduced program opportunities as penalties for exercising his right against self-incrimination is unavailing. Like the opportunity to earn early release, custody status and programming opportunities are benefits to which the defendant is not automatically entitled. *See Meachum v. Fano*, 427 U.S. 215, 224 (1976) (prisoners have no constitutionally protected interest in being assigned to a particular area of the prison). "Offering the possibility of earning a benefit is certainly an incentive to participate [in the SOP], but it is not coercion." *Brooker v. Warden*, No. 98-466-JD (D.N.H. June 22, 1999).

The defendant cites *Lile v. McKune*, 224 F.3d 1175 (10th Cir. 2000), *petition for cert. filed*, 69 U.S.L.W. 3506 (U.S. January 22, 2001) (No. 00-1187), in support of his contention that increased custody and reduced programming opportunities amount to a Fifth Amendment violation. In *Lile*, the court held that the prison's sex offender treatment program, which required disclosure of all sex offenses, violated the inmate's Fifth Amendment right because inmates who chose not to participate in the program were immediately transferred from minimum security to maximum security, thus resulting in a restriction of the inmate's privileges. *See id.* at 1185-86. Even if we were to follow *Lile*, the defendant's case differs. *See Ainsworth v. Risley*, 244 F.3d 209 (1st Cir. 2001). Here, the defendant presented no evidence to the trial court that he received an increased custody status or reduced programming opportunities as a result of his refusal to admit guilt.

The SOP director testified that, generally, inmates who do not participate in the SOP are not classified below the C-3 custody status, thus resulting in a more restrictive environment during their incarceration, but that "there have been exceptions to that. Classification can override recommendations and actually classify someone C-2 if they see fit . . . ." The SOP director also testified that custody status may affect an inmate's ability to participate in certain programs. However, there was no evidence presented that the defendant's custody status was changed or that he was denied access to certain programs. Moreover, as noted above, custody status and the resulting accompanying privileges are benefits to which the defendant is not automatically entitled, and the hope that the defendant might receive such benefits is not sufficient to establish a Fifth Amendment violation.

The defendant raised other issues in his notice of appeal, but did not brief them. Therefore, they are deemed waived. *See State v. Mountjoy*, 142 N.H. 648, 652 (1998).

*Affirmed.*

BROCK, C.J., and BRODERICK and NADEAU, JJ., concurred.