IN THE MATTER OF: TRAVIS RAY BUTTS

No. COA02-531

(Filed 20 May 2003)

## 1. Confessions and Incriminating Statements— juvenile— motion to suppress—statement obtained in absence of parent

The trial court erred in a case adjudicating respondent juvenile a delinquent for commission of first-degree sexual offense by denying respondent's motion to suppress under N.C.G.S. § 7B-2101 his statement obtained by a detective after respondent's father voluntarily left the room and by failing to determine whether respondent was in custody when he signed the statement, because: (1) N.C.G.S. § 7B-2101 allows a juvenile a right to the presence of a parent, guardian, custodian, or attorney and to be informed of this right while he is in custody, and that right cannot be waived by a parent on the juvenile's behalf; (2) respondent's statement that "it happened" was insufficient, without more detail, to constitute the equivalent of a full confession to first-degree sex offense so as to render the later admission of his written statement harmless; and (3) absent the signed confession, the evidence would have presented a much closer case when there was no physical evidence or eyewitnesses and the only basis for the factfinder to determine the truth was to weigh the credibility of respondent and the alleged victim.

## 2. Evidence— expert testimony—sexual abuse

The trial court did not commit plain error in a case adjudicating respondent juvenile a delinquent for commission of first-degree sexual offense by allowing a pediatrician to testify under N.C.G.S. § 8C-1, Rule 702 that her physical examination of the victim was consistent with the interview in which the victim told the pediatrician about the incident involving respondent even though the exam failed to show any physical injury because the pediatrician did not testify that the allegations in the juvenile petition

IN RE T.R.B.

[157 N.C. App. 609 (2003)]

were accurate, but only that her examination of the alleged victim was consistent with her interview of him.

### 3. Probation and Parole— juvenile delinquency—admission of guilt as a condition of probation

The trial court erred in a case adjudicating respondent juvenile a delinquent for commission of first-degree sexual offense by specifically conditioning respondent's probation on his express admission of the underlying offense after he had testified at trial and denied guilt, because the record contains no indication that respondent was granted use immunity or protected at least against the use of his compelled answers and evidence derived therefrom in any subsequent criminal case in which he is a defendant.

Judge WYNN concurring in part and dissenting in part.

Appeal by respondent from adjudication entered 2 August 2001 by Judge Joseph E. Setzer, Jr. and from disposition entered 27 September 2001 by Judge David B. Brantley in Wayne County District Court. Heard in the Court of Appeals 12 February 2003.

*Attorney General Roy Cooper, by Assistant Attorney General Laura E. Crumpler, for the State.*

*Marjorie S. Canaday for respondent-appellant.*

LEVINSON, Judge.

Respondent appeals from adjudication of delinquency for commission of a first degree sex offense. The juvenile charges arose from an incident occurring between respondent and C.C. (the prosecuting witness's initials are used to preserve his privacy). The two boys were seventh grade classmates in a self-contained special education class. On 16 March 2001, C.C. spent the night with respondent, who lived with his father. During the evening, the boys watched movies in respondent's room while his father, Willie Butts, watched TV in the living room. Butts owned several guns, including a .357 magnum, which he usually kept near him, or in a holster. Both boys acknowledge that at some point during the night they engaged in sexual activity. However, their testimony conflicted sharply regarding the nature of the sexual contact.

At the hearing, C.C. testified that after the boys watched a movie, respondent took him to his father's bedroom and showed him his

father's .357 magnum gun. When they returned to respondent's bedroom, respondent warned C.C. that if he "told anybody what was about to happen, he'd shoot [him]." C.C. put on his pajamas and got ready for bed, while respondent tried to convince him to experiment with sexual activity, saying "it'll be fun." When C.C. refused, respondent became upset and pinned C.C. down on the bed. He performed an act of oral sex on C.C. in which he bit his penis, and then had anal intercourse with C.C. After respondent stopped, he threatened to kill C.C. if he told anyone. The State presented several other witnesses whose testimony generally corroborated C.C.'s account of the events in question. C.C.'s mother testified that her son was in a special education class, and took medications for depression and "anger control." Two weeks after he spent the night with respondent, C.C. told his mother that respondent had "pinned him down" and forced him to engage in sexual acts. Dr. Mary Lou Cooke, a pediatrician, testified that C.C. had given her an account of the incident consistent with his trial testimony. She also testified that, notwithstanding the absence of physical or medical indicators of abuse, she considered C.C.'s physical examination to be "consistent" with his interview. Detective Robin Carrasquillo testified regarding her investigation of the charges. She first interviewed C.C. and his mother, and obtained a statement from C.C. She then interviewed respondent at the law enforcement center, where respondent signed a statement admitting the allegation in the petition.

Respondent testified at the hearing and denied all charges. He testified that after the two boys watched a movie, they played video games and then went to sleep. When he awoke later in the night, C.C. was penetrating him from behind, and refused to stop. Respondent "throwed [sic] him off" and went to sleep in the living room. Respondent denied threatening C.C. with a gun, or performing anal or oral sex on C.C. Respondent's testimony in this regard conflicted with his admissions in a signed confession obtained by Carrasquillo and introduced over respondent's objection. Ellen Jones, the primary teacher for both boys, testified that C.C. had "difficulty getting along" with other children and "conflict[ed] with all the students in the classroom." Jones also testified that C.C. often told lies at school. Mr. Butts, respondent's father, testified that his son had no access to any of his guns, which were in a locked cabinet, and that he had noticed nothing unusual the night that C.C. stayed over. Other evidence will be discussed as necessary to resolve the issues presented herein.

I.

**[1]** Respondent raises four arguments on appeal. In two of these, respondent contends that the trial court erred by denying his motion to suppress the statement obtained by Detective Carrasquillo.

"[I]n a suppression hearing, the State has the burden to demonstrate the admissibility of the challenged evidence." *State v. Tarlton*, 146 N.C. App. 417, 420, 553 S.E.2d 50, 53 (2001) (citing *State v. Harvey*, 78 N.C. App. 235, 237, 336 S.E.2d 857, 859 (1985)). In the instant case, respondent argues that his statement was procured in violation of his rights under N.C.G.S. § 7B-2101, which provides in relevant part that:

(a) Any juvenile in custody must be advised prior to questioning:

. . . .

(3) That the juvenile has a right to have a parent, guardian, or custodian present during questioning; and

. . . .

(b) When the juvenile is less than 14 years of age, no in-custody admission or confession resulting from interrogation may be admitted into evidence unless the confession or admission was made in the presence of the juvenile's parent, guardian, custodian, or attorney.

N.C.G.S. § 7B-2101(a)(3) and (b) (2001). Respondent notes that the waiver form he signed did not include any notification that he had the right to the presence of "a parent, guardian, or custodian . . . during questioning." Moreover, it is undisputed that respondent was under 14 years old at the time, and that only Detective Carrasquillo and another officer were present when much of respondent's statement was obtained. Therefore, if respondent's confession was obtained during a custodial interrogation, it would be inadmissible.

The rights protected by N.C.G.S. § 7B-2101 apply only to custodial interrogations. *State v. Gaines*, 345 N.C. 647, 661, 483 S.E.2d 396, 405, *cert. denied*, 522 U.S. 900, 139 L. Ed. 2d 177 (1997) (statute "pertains only to statements obtained from a juvenile defendant as the result of custodial interrogation"). Thus, the threshold inquiry for a court ruling on a suppression motion based on G.S. § 7B-2101, is whether the respondent was in custody when the statement was obtained. "[I]n

**IN RE T.R.B.**

[157 N.C. App. 609 (2003)]

determining whether a suspect [is] in custody, an appellate court must examine all the circumstances surrounding the interrogation; but the definitive inquiry is whether there was a formal arrest or a restraint on freedom of movement of the degree associated with a formal arrest." *State v. Buchanan*, 353 N.C. 332, 338, 543 S.E.2d 823, 827 (2001) (quoting *Gaines*, 345 N.C. at 662, 483 S.E.2d at 405). This requires the trial court to apply " 'an objective test as to whether a reasonable person in the position of the defendant would believe himself to be in custody or that he had been deprived of his freedom of action in some significant way.' " *State v. Sanders*, 122 N.C. App. 691, 693, 471 S.E.2d 641, 642 (1996) (quoting *State v. Greene*, 332 N.C. 565, 577, 422 S.E.2d 730, 737 (1992)).

In the instant case, respondent argued to the trial court that he was in custody when his statement was taken, thus invoking his rights under G.S. § 7B-2101 to the presence of a parent, guardian, custodian, or attorney and to be informed of this right. Respondent also argued that the express terms of the statute did not allow for any exceptions to the bar on confessions taken from a child of 13 in the absence of a parent, guardian, custodian, or attorney. G.S. § 7B-2101 ("no in-custody . . . confession . . . may be admitted into evidence unless . . . made in the presence of" parent, etc.). However, the trial court did not rule on this issue. Instead, following arguments of counsel for respondent and the State on whether respondent was in custody, the court ruled as follows:

> MR. GURLEY (respondent's attorney): . . . I filed the motion to suppress . . . in regards to North Carolina General Statute 7B-2101(a)(3) and (b), "that *no in-custody admission or confession . . . may be admitted.* . . . I would be objecting to admitting into evidence based upon the . . . Statute sections we just cited. . . .
>
> PROSECUTOR: Your Honor, *he was not in custody* at the time. . . .
>
> THE COURT: Well, *that's not really the issue,* but I'm going to *OVERRULE the OBJECTION on the grounds that Mr. Butts voluntarily left the interrogation room.*

(emphasis added). Detective Carrasquillo continued testifying about her interview of respondent, until respondent again objected:

> MR. GURLEY: Your honor, . . . I would OBJECT because I think it's obvious now that [respondent] is not free to leave . . . therefore, *he would be in custody.*

IN RE T.R.B.

[157 N.C. App. 609 (2003)]

THE COURT: OVERRULED. Again, *that's not the issue*. The Miranda rights were read, *Mr. Butts voluntarily left the room* during the interrogation. There [were] no violations.

(emphasis added). The trial court overruled respondent's objection on the basis that, inasmuch as Mr. Butts left the interview room of his own free will after respondent and Butts were apprised of their rights under *Miranda v. Arizona*, 384 U.S. 436, 16 L. Ed. 2d 694 (1966), the issue of whether respondent was in custody was rendered moot.

The trial court's ruling was predicated on the assumption that if respondent's *father* voluntarily absented himself from the room, there would be no violation of G.S. § 7B-2101. However, the statute protects the rights of the juvenile, which his parent cannot waive on his behalf. In *State v. Branham*, 153 N.C. App. 91, 98, 569 S.E.2d 24, 28 (2002), "[t]he trial court made findings . . . that defendant's mother refused to see him." This Court held:

> These . . . findings do not support the conclusion that the defendant's waiver and statement complied with N.C.G.S. § 7B-2101. Even if we assume that defendant's mother did not want to be present during defendant's interrogation, *she did not have the ability to, in effect, waive his right to have her present during interrogation.*

*Id.* at 98, 569 S.E.2d at 29 (emphasis added) (citation omitted); *see also In re Ewing*, 83 N.C. App. 535, 537, 350 S.E.2d 887, 888 (1986) ("finding that respondent's mother . . . waived respondent's juvenile rights is not equivalent to a finding that respondent knowingly and understandingly waived his rights. Furthermore, 'a parent, guardian, or custodian may not waive *any* right on behalf of the juvenile.' ") (quoting N.C.G.S. § 7A-595(b)). We conclude the trial court erred by failing to determine whether respondent was in custody when he signed the statement.

The trial court's error was not harmless in light of the facts of this case. N.C.G.S. § 15A-1443 provides in part:

> A defendant is prejudiced by errors . . . when there is a reasonable possibility that, had the error in question not been committed, a different result would have been reached at the trial out of which the appeal arises. The burden of showing such prejudice under this subsection is upon the defendant.

N.C.G.S. § 15A-1443(a) (2001). "When a case turns on the credibility of the witnesses it is difficult to hold . . . an admission harmless." *State v. Wilson*, 118 N.C. App. 616, 621, 456 S.E.2d 870, 873 (1995) (citing *State v. Rowland*, 89 N.C. App. 372, 366 S.E.2d 550 (1988)). In the instant case, the transcript does not establish that respondent confessed to committing a first degree sex offense while Mr. Butts was in the interrogation room. In this regard, Detective Carrasquillo testified in pertinent part as follows:

> DETECTIVE CARRASQUILLO: I began speaking with them about the allegations. I explained to Mr. Butts and to [respondent] the allegations, what [C.C.] had told me, and basically I asked [respondent] if any of this happened. [Respondent] denied that anything had happened. I began explaining in a little bit more detail to [respondent] in the fact that it was important that the truth be told regardless of the situation. [Respondent] then told me that it may have happened but he was. . . .

> QUESTION: [Respondent] told you what?

> DETECTIVE CARRASQUILLO: [Respondent] then told me it may have happened but he was asleep. Mr. Butts then—and I quote—stated, "Damn it, boy, you know whether it happened or not." At the time [respondent] said, "Yes, it happened." Mr. Butts became upset and left the room.

Detective Carrasquillo's testimony indicates that when respondent admitted that "it might have happened" but that he "was asleep," his father scolded him to make a definite statement one way or the other, at which point respondent stated "yes, it happened" rather than "it *might have* happened." While this statement may fairly be regarded as an admission that there was sexual contact between the boys, it is far from a confession to commission of a first degree sexual offense. There is nothing in this dialogue that constitutes a disavowal of respondent's initial contention that he was sleeping when the sexual contact began, much less an admission that he employed force or the use of a deadly weapon to sexually assault C.C. Further, while Detective Carrasquillo testified that before respondent made a statement, she had generally "explained to . . . [respondent] the allegations, what [C.C.] had told me[,]" Detective Carrasquillo's testimony did not establish that her explanation included a recitation of all of the elements of first degree sex offense. We conclude that respondent's statement that "it happened" is insufficient, without more detail, to constitute the equivalent of a full confession to first

degree sex offense, so as to render the later admission of his written statement harmless.

Moreover, absent the signed confession, the evidence would have presented a much closer case. Without physical evidence or eyewitnesses, the only basis for the fact-finder to determine the truth of the matter was to weigh the credibility of C.C. and respondent. In this regard, C.C.'s account was supported by testimony from his mother, Dr. Cooke, and Detective Carrasquillo, whose testimony attested to the consistency of C.C.'s accounts of the events in question. On the other hand, respondent's father testified that respondent had no access to Mr. Butt's firearms, and that he noticed nothing unusual when C.C. spent the night. Moreover, Ms. Jones, who taught both boys in a special education class and is unrelated to either party, testified that it was C.C. who lied frequently, and who had social adjustment problems. In this context we conclude that without a signed confession "there is a reasonable possibility that . . . a different result would have been reached[.]" N.C.G.S. § 15A-1443(a) (2001).

We conclude the trial court's failure to properly determine whether respondent was in custody before admitting his statement to law enforcement officers constituted "reversible error which denied the [respondent] a fair trial conducted in accordance with law." N.C.G.S. § 15A-1447(a) (2001). Accordingly, respondent is entitled to a new adjudication hearing at which the admissibility of respondent's statement to Detective Carrasquillo will be determined in accordance with the provisions of G.S. § 7B-2101.

## II.

[2] Although we have determined that a new adjudication hearing is required, we elect to review respondent's other assignment of error because the same issues may arise on remand. Respondent next argues the trial court committed plain error by allowing Dr. Cooke to testify that her physical examination of C.C. was "consistent" with the interview in which he told Dr. Cooke about the incident involving respondent. We conclude that admission of this testimony was not plain error.

Plain error is " '*fundamental* error, something so basic, so prejudicial, so lacking in its elements that justice cannot have been done,' or . . . 'grave error which amounts to a denial of a fundamental right of the accused[.]' " *State v. Odom*, 307 N.C. 655, 660, 300 S.E.2d 375, 378 (1983) (quoting *United States v. McCaskill*, 676 F.2d 995, 1002

(4th Cir. 1982)). "To prevail under a plain error analysis, a defendant must establish not only that the trial court committed error, but that absent the error, the jury probably would have reached a different result." *State v. Perkins*, 154 N.C. App. 148, 152, 571 S.E.2d 645, 648 (2002) (quoting *State v. Jones*, 137 N.C. App. 221, 226, 527 S.E.2d 700, 704 (2000)).

In the instant case, Dr. Cooke testified on direct examination regarding C.C.'s account of the assault by respondent. Her physical examination did not reveal physical injury, abnormalities, or evidence of sexually transmitted disease. When asked to evaluate the exam together with the interview, Dr. Cooke testified as follows:

[PROSECUTOR]: And how did your findings on the physical exam compare with the interview that you had with [C.C.]

[DR. COOKE]: Its consistent because there—often times physical evidence and history do not collaborate. So lots of times you don't find physical evidence even if there has been some penetration unless you can—I mean, sometimes you will see tears and you will see scars and you will see some increase in anal tone, but that's not necessarily a given.

Respondent did not object to the introduction of this testimony. He argues on appeal that, by declaring the interview to be "consistent" with an exam that failed to show injury, Dr. Cooke's testimony "had the effect of vouching for [C.C.'s] credibility. . . ." We disagree.

Under N.C.G.S. § 8C-1, Rule 702 (2001), "[i]f scientific, technical or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion." An expert witness may not attest to the victim's credibility, as he or she is in no better position than the jury to assess credibility. *State v. Bailey*, 89 N.C. App. 212, 219, 365 S.E.2d 651, 655 (1988) ("the testimony of an expert to the effect that a prosecuting witness is believable, credible, or telling the truth is inadmissible"). However, otherwise admissible expert testimony is not rendered inadmissible merely because it enhances a witness's credibility. *State v. Dick*, 126 N.C. App. 312, 315, S.E.2d 88, 89 (1997) ("testimony based on the witness's examination of the child witness and expert knowledge . . . is not objectionable because it supports the credibility of the witness . . ."). An expert's opinion that sexual abuse definitely occurred is inadmissible absent a foundation

showing that "the opinion expressed by [the expert] was really based upon [the expert's] special expertise, or stated differently, that [the expert] was in a better position than the jury to have an opinion on the subject. . . ." *State v. Trent*, 320 N.C. 610, 614, 359 S.E.2d 463, 465 (1987). Therefore, an expert may not testify that a child "*was* sexually abused" when the expert's opinion rests entirely on the child's statements, unsupported by physical or other evidence. *State v. Grover*, 142 N.C. App. 411, 417, 543 S.E.2d 179, 183, *aff'd*, 354 N.C. 354, 553 S.E.2d 679 (2001).

However, our appellate courts have generally upheld the admission of testimony from a medical expert in a sexual abuse case that her observations are "consistent with sexual abuse." *State v. Brothers*, 151 N.C. App. 71, 77-78, 564 S.E.2d 603, 607-08 (2002) (physician properly permitted to testify that witness had vaginal scarring which the physician concluded was "consistent with sexual abuse"); *see also State v. Aguallo*, 322 N.C. 818, 820, 370 S.E.2d 676, 678 (1988) (doctor's testimony that physical examination was "consistent with" victim's earlier statements held "vastly different from" comments on victim's credibility). The North Carolina Supreme Court recently delineated the distinction between admissible expert testimony and opinions that simply attest to the witness's credibility. In *State v. Stancil*, 355 N.C. 266, 267, 559 S.E.2d 788, 789 (2002), the Court ruled:

> In a sexual offense prosecution involving a child victim, the trial court should not admit expert opinion that sexual abuse has *in fact* occurred because, absent physical evidence supporting a diagnosis of sexual abuse, such testimony is an impermissible opinion regarding the victim's credibility. However, an expert witness may testify, upon a proper foundation, as to the profiles of sexually abused children and whether a particular complainant has symptoms or characteristics consistent therewith.

(citations omitted) (citing *Stater v. Hall*, 330 N.C. 808, 818, 412 S.E.2d 883, 888 (1992); *Aguallo*, 322 N.C. at 822-23, 370 S.E.2d at 678; *State v. Kennedy*, 320 N.C. 20, 32, 357 S.E.2d 359, 366 (1987)).

In the present case, Dr. Cooke did not testify that the allegations in the juvenile petition were accurate, but only that her examination of C.C. was "consistent" with her interview of him. We conclude that the admission of this testimony was neither error nor plain error. This assignment of error is overruled.

III.

[3] Finally, respondent argues the trial court committed reversible error by imposing a condition of probation that required him to admit guilt for the underlying offense, after he had testified at trial and denied guilt. Respondent contends this condition of probation violates his Fifth Amendment right to be free from self-incrimination. *See* U.S. Const. amd. V. Because respondent did not object at the time disposition was entered, the State urges us to apply plain error analysis to this issue. However, we note that N.C.G.S. § 15A-1446 provides in relevant part as follows:

> (d) Errors based upon any of the following grounds, which are asserted to have occurred, may be the subject of appellate review even though no objection, exception or motion has been made in the trial division.
>
> . . . .
>
> (18) The sentence imposed was unauthorized at the time imposed, exceeded the maximum authorized by law, was illegally imposed, or is otherwise invalid as a matter of law.

N.C.G.S. § 15A-1446(d)(18) (2001). We conclude that respondent's argument raises the issue of whether his sentence "was illegally imposed, or is otherwise invalid as a matter of law." *In re Allison*, 143 N.C. App. 586, 592, 547 S.E.2d 169, 172 (2001) (citing G.S. § 15A-1446(d)(18)). Accordingly, the issue is properly before us, notwithstanding respondent's failure to object at the dispositional hearing. *Id.* (noting that "certain errors may be reviewed on appeal despite the absence of an objection, exception or motion made in the trial court").

As a condition of probation, the trial court required the following:

> 27. That the juvenile participate in and successfully complete sexual offender specific evaluation/treatment program. *Participation is defined as* attendance at all meetings, *admission of responsibility for offense* and progress toward reasonable treatment goals.

(emphasis added). During the disposition hearing, the trial court underscored this point:

> THE COURT: All right, at this point then, I'm going to place [respondent] on supervised probation for 12 months initially. I

IN RE T.R.B.

[157 N.C. App. 609 (2003)]

order that he not have any contact with [C. C.] . . . [and that] he also participate in and complete the sex offender specific evaluation and treatment program by the Wayne County Mental Health Center. And *participation is defined as* attendance of all meetings, *admission of responsibility for offense* and progress toward reasonable treatment goals.

(emphasis added). After the court stated the other probationary conditions, the Court Counselor asked to be heard:

MR. PERRY: May I ask something, Your Honor?

THE COURT: Yes, sir.

MR. PERRY: *I just think it's important that [respondent]* and his father *understand that one violation* he can end up back here *and the recommendation will be training school.* . . . He needs to be at every meeting and everything needs to be done. . . .

(emphasis added).

The Fifth Amendment provides in relevant part that no person "shall be compelled in any criminal case to be a witness against himself." U.S. Const. amd. V. Likewise, the North Carolina Constitution protects "every person charged with crime" from being "compelled to give self-incriminating evidence." N.C. Const. art. I, § 23. The privilege against self-incrimination extends to juveniles charged with delinquency. See N.C.G.S. § 7B-2405(4) (2001).

The U.S. Supreme Court's decision in *Minnesota v. Murphy*, 465 U.S. 420, 79 L. Ed. 2d 409 (1984), the leading relevant case, "makes clear that the state cannot make waiver of the privilege against self-incrimination a condition of probation." *State v. Eccles*, 877 P.2d 799, 800 (Ariz. 1994). However, neither the United States Supreme Court nor the North Carolina Supreme Court has addressed the precise issue before this Court: whether a court can condition probation on the probationer's admitting guilt of the offense for which he was convicted, when the offender has testified at trial and denied culpability.

Some courts have held that probation requirements like the one in this case place respondent in a "classic penalty" situation. *See, e.g., State ex rel. Tate v. Schwarz*, 654 N.W.2d 438, 441 (Wis. 2002) (probation revoked for "failure to cooperate with sex offender treatment" based on defendant's "resistance to admitting sexual misconduct with the victim": Court holds that "defendant . . . cannot be subjected to probation revocation for refusing to admit to the crime of conviction,

**IN RE T.R.B.**

[157 N.C. App. 609 (2003)]

unless he is first offered the protection of use and derivative use immunity"); *State v. Imlay*, 813 P.2d 979, 985 (Mont. 1991) (stating "it is clear . . . the defendant is being subjected to a penalty that he would not otherwise be subjected to if he would simply admit his guilt"), *cert. granted sub nom. Montana v. Imlay*, 503 U.S. 905, 117 L. Ed. 2d 489, *cert. dismissed*, 506 U.S. 5, 121 L. Ed. 2d 310 (1992); *compare Mace v. Amestoy*, 765 F. Supp. 847 (D. Vt. 1991) (probation revocation impermissible where defendant pled guilty to reduced sexual assault but refused to admit to aggravated sexual behavior on which original charge was based). The "classic penalty" argument sometimes is supported by concerns that a confession obtained during therapy would be admissible if the defendant were retried for the same offense, or could be the basis for a later prosecution for perjury. *See, e.g.,* Jonathan Kaden, *Therapy for Convicted Sex Offenders: Pursuing Rehabilitation Without Incrimination*, 89 J. Crim. L. & Criminology 347, 348-49 (Fall, 1998) (discussing, *inter alia*, differing Fifth Amendment implications based upon whether offender pleads guilty, and contrasting the difference in Fifth Amendment implications between penalty contexts and ineligibility for privileges circumstances); Brendan J. Shevlin, *"Between the Devil and the Deep Blue Sea": A Look at the Fifth Amendment Implications of Probation Programs for Sex Offenders Requiring Mandatory Admissions of Guilt*, 88 Ky. L.J. 485 (Winter, 1999-2000).

Convincing arguments can also be advanced that a sentencing court may require the convicted to admit guilt as a condition of probation, without an associated constitutional violation. At least one court has held that, in the context of a prison sex offender treatment program, benefits can be denied to a prisoner who "refuses to make statements necessary for his rehabilitation, as long as their denial is based on the prisoner's refusal to participate in his rehabilitation and not his invocation of his privilege." *McMorrow v. Little*, 109 F.3d 432, 436 (8th Cir. 1997). *See State v. Carter*, 772 A.2d 326, 328 (N.H. 2001) (where participation in sex offender therapy for prisoners is voluntary, court holds that "the defendant is not being compelled to incriminate himself: he may choose not to participate and thus not admit any guilt. . . . Such a tactical choice does not rise to the level of compulsion required for a Fifth Amendment violation."); *see also Gollaher v. United States*, 419 F. 2d 520 (9th Cir. 1969), *cert. denied*, 396 U.S. 960, 24 L. Ed. 2d 424 (State interest in rehabilitation can override compulsory self-incrimination). We conclude, however, that *Murphy* controls the outcome of the instant case, and does not afford such an option: "[A] State may validly insist on answers to even

IN RE T.R.B.

[157 N.C. App. 609 (2003)]

incriminating questions . . . as long as it recognizes that the required answers may not be used in a criminal proceeding [so that] . . . . a probationer's 'right to immunity as a result of his compelled testimony would not be at stake.' " *Murphy*, 465 U.S. at 435, 79 L. Ed. 2d at 425 (quoting *Sanitation Men v. Comm'r of Sanitation*, 392 U.S. 280, 284, 20 L. Ed. 2d 1089, 1093 (1968)).

Moreover, since the time of the trial court's entry of a disposition order, this Court decided *In re Lineberry*, 154 N.C. App. 246, 572 S.E.2d 229 (2002). In *Lineberry*, as in the instant case, the juvenile respondent was charged with commission of a sexual offense and adjudicated delinquent following a hearing at which respondent testified and denied his guilt. *Id.* The disposition, like that before us, required the respondent to participate in, and cooperate with, a treatment program for sex offenders. *Id.* Following a subsequent motion for review, the juvenile was ordered held in secure custody, in part because of his refusal during sex-offender treatment to admit guilt of the underlying offense. *Id.* at 255, 572 S.E.2d at 231. This Court held:

> In finding that juvenile's refusal to admit to the offenses was a factor justifying his continued custody pending appeal, the trial court exposed juvenile to the classic penalty situation of choosing between the privilege against self-incrimination and prolonged confinement. . . . Thus, the trial court's conclusion that juvenile should remain in custody pending appeal based on juvenile's refusal to admit to the offense for which he was adjudicated delinquent violated juvenile's constitutional right against self-incrimination.

*Id.* at 255, 572 S.E.2d at 236. We find *Lineberry's* holding functionally indistinguishable from the instant case and are therefore bound by it. Accordingly, we hold that, on the specific facts of this case, the trial court erred by specifically conditioning respondent's probation on his express admission of the underlying offense.

We are not unmindful of the therapeutic benefits that may be obtained by accepting responsibility for one's actions. We recognize, too, the trial court's need for flexibility in fashioning appropriate dispositions for offenders. This need can be especially compelling in the context of our juvenile courts. Our holding does not prevent a court from revoking probation based upon a probationer's overall failure to participate in a validly required program simply because one aspect

of the probationer's refusal to cooperate is an unwillingness to admit responsibility for his offense. The trial court may require a juvenile to cooperate with his supervising court counselor and, if counseling or psychological treatment is a part of the disposition, the trial court may require a juvenile to complete a treatment regimen and generally engage honestly in the counseling process, without violating the U.S. Constitution. *See, e.g., Murphy* at 436, 79 L. Ed. 2d at 425, (probationer could be required "to appear and give testimony about matters relevant to his probationary status" provided the State "did not attempt to take the extra, impermissible step" of requiring him "to choose between making incriminating statements and jeopardizing his conditional liberty by remaining silent"). Moreover, if respondent were granted use immunity or "protected at least against the use of his compelled answers and evidence derived therefrom in any subsequent criminal case in which he is a defendant", *id.* at 426, 79 L. Ed. 2d at 418 (quoting *Lefkowitz v. Turley,* 414 U.S. 70, 78, 38 L. Ed. 2d 274, 282 (1973)), this would obviate the Fifth Amendment violation. In the case *sub judice,* the record contains no indication that such immunity was offered, or that respondent's admissions would be excluded from a subsequent hearing. *See Razor v. Com.,* 960 S.W.2d 472, 474 (Ky. App. 1997) (no threat of prosecution posed by probationer's admission of guilt where State statute provided "[a]ll information obtained in the discharge of an official duty by any probation or parole officer shall be privileged and shall not be received as evidence in any court").

In summary, this case is reversed and remanded for a new adjudication hearing at which the admissibility of respondent's statement to a law enforcement officers will be properly determined.

Reversed and remanded.

Judge WYNN concurring in part, dissenting in part.

Judge TIMMONS-GOODSON concurs.

WYNN, Judge, concurring in part, dissenting in part.

I agree with majority's well-reasoned opinion; however, I am compelled to dissent and allow the State an opportunity to appeal to our Supreme Court the issue of whether the ultimate disposition of awarding a new trial in this matter overrules our earlier case of *State*

**IN RE T.R.B.**

[157 N.C. App. 609 (2003)]

*v. Pugh*, 138 N.C. App. 60, 530 S.E.2d 328 (2000) (Timmons-Goodson, J., dissenting).[1]

In *Pugh*, this Court upon holding that the trial court erred in determining that the child was not competent to testify based on an inadequate inquiry, stated:

> We remand to the juvenile court, for a determination consistent with this opinion, the issue of D.R.'s competency to testify. If, after conducting an appropriate *voir dire* of D.R., the juvenile court determines that D.R. is incompetent to testify, the adjudicatory and dispositional order filed 23 March 1999 is affirmed. If, however, after proper inquiry, the juvenile court determines that D.R. is competent to testify, the juvenile shall be entitled to a new adjudicatory hearing.

*Pugh*, 138 N.C. App. at 68, 538 S.E.2d at 333.

In this case, upon determining that the trial court erred by admitting the juvenile's confession without taking evidence and ruling on whether the juvenile was in custody when he made the statement, the majority awards a new trial rather than remanding the matter to the trial court for a determination of whether respondent was in custody at the time he signed an admission of guilt. Since an apparent conflict exists in the mandate of this case and that in *Pugh*, I dissent to allow the State the opportunity to certify this issue to our Supreme Court for a resolution of the two conflicting opinions.

---

1. In dissent, Judge Timmons-Goodson stated that the error could not be cured by conducting a new competency hearing. Instead, she opined that "the juvenile is entitled to a new trial on the charges . . . ." *Id.* at 68. Since the juvenile did not appeal, as a matter of right under N.C. Gen. Stat. § 7A-30 (1999), the majority opinion was not reviewed by our Supreme Court.