STATE OF NORTH CAROLINA v. TERRY BERNARD BLACKMON

No. 7526SC679

(Filed 7 January 1976)

1. **Robbery § 5— armed robbery — failure to submit assault issues**
    The trial court in a prosecution for attempted armed robbery did not err in failing to submit to the jury issues of defendant's guilt of the lesser included offenses of assault with a deadly weapon and simple assault where all the State's evidence tended to show that defendant, while brandishing an opened pocket knife, demanded that the victim give him money, and all of defendant's evidence tended to show that he committed no crime.

2. **Robbery § 3— competency of testimony**
    Testimony by the victim of an attempted armed robbery concerning a confrontation with defendant and others in a school hallway shortly before the attempted robbery, a statement concerning his actions immediately after the crime, and his identification of other youths who were with defendant were relevant and material in a trial of defendant for the attempted robbery.

3. **Criminal Law § 88— limitation on cross-examination**
    The trial court in a robbery case did not unduly limit defendant's cross-examination of the victim when it sustained objections to certain questions asked the victim.

4. **Criminal Law § 126— polling jury — juror's comment on evidence — acceptance of verdict**
    The trial court did not err in the denial of defendant's motion for mistrial when one juror commented on certain aspects of the evidence when she was polled since the juror replied in the affirmative each time the judge asked her if her verdict was guilty of attempted common law robbery.

APPEAL by defendant from *Thornburg, Judge.* Judgment entered 13 March 1975 in Superior Court, MECKLENBURG County. Heard in the Court of Appeals 19 November 1975.

Defendant was tried on his plea of not guilty to an indictment charging attempted armed robbery. The State's evidence tended to show: On 25 September 1974 Michael Chesser, a student at West Charlotte High School, was approached by defendant in the hall of the school as Chesser was opening his locker. Defendant was not a student at the school at the time. Defendant said, "Give me a dime, man." Chesser replied that he did not have a dime, whereupon defendant pulled out a knife, opened it, and repeated his demand, "Give me a dime."

As defendant said this, he was holding the knife and moving his hand up and down. Chesser testified:

"He (referring to defendant) asked me why I didn't have one, and since he had a knife on me, I told him, I decided, you know, that I had to do something or I might get cut; so I told him that I didn't stay at school all day, that I left school early and that is why I didn't have any money, because I didn't stay there long enough to eat lunch, and there was nothing else to spend money on.

So he walked on off in the same direction he had been coming. . . ."

Defendant testified that he was never at West Charlotte High School on 25 September 1974 but was at other places in Charlotte during the entire day. He offered evidence tending to support his alibi.

The court instructed the jury it might return one of three verdicts, either (1) finding defendant guilty of attempt to commit robbery with a dangerous weapon, or (2) finding defendant guilty of an attempt to commit common law robbery, or (3) not guilty.

The jury found defendant guilty of attempted common law robbery. From judgment imposing a prison sentence, defendant appealed.

, Attorney General Edmisten by Assistant Attorney General Charles J. Murray for the State.

Chambers, Stein, Ferguson & Becton by Karl Adkins for defendant appellant.

PARKER, Judge.

[1] Defendant contends the court erred in failing to submit to the jury issues of defendant's guilt of the lesser included offenses of assault with a deadly weapon or simple assault. "The necessity for instructing the jury as to an included crime of lesser degree than that charged arises when and only when there is evidence from which the jury could find that such included crime of lesser degree was committed." State v. Hicks, 241 N.C. 156, 159, 84 S.E. 2d 545, 547 (1954). Here, all of the evidence for the State tended to show that defendant, while brandishing an opened pocket knife, demanded that Chesser

give him money. All of defendant's evidence tended to show that he committed no crime. There was no evidence to support a verdict of guilty of an assault with a deadly weapon, a lesser included offense of the crime of attempted armed robbery, or of simple assault, a lesser included offense of attempted common law robbery. See, *State v. Allison,* 280 N.C. 175, 184 S.E. 2d 857 (1971) ; *State v. Bailey,* 4 N.C. App. 407, 167 S.E. 2d 24 (1969). The court did not err in failing to submit issues not supported by the evidence.

[2]   Defendant objects to the allowance of certain testimony into evidence as being irrelevant, inflammatory, and prejudicial. The testimony objected to comprises Chesser's statement concerning a confrontation with defendant and others in the school hallway shortly before the attempted robbery, a statement concerning his actions immediately after the attempted robbery, and his identification of other youths who were with defendant. We find all of this testimony to be relevant and material, and thus properly admitted.

[3]   Defendant assigns as error that the trial court unduly limited his right to cross examine the State's witness, Chesser. This assignment of error is based on Exceptions 7 and 8. As to these, the record shows the following:

> "Q. Did he say, "If you don't give me a dime I am going to cut you?" Did he say that?
>
> A. I don't recall.
>
> Q. Well, do you recall your testimony at the preliminary hearing when you said he didn't say that?
>
> A. Not specifically.
>
> Q. Are you saying now that he said—
>
> MR. SAUNDERS: I OBJECT. He just testified to the question.
>
> COURT: Sustained. EXCEPTION No. 7.
>
> Q. Do you recall if he said anything?
>
> A. No, sir. I don't recall him saying anything to the effect that, "If you don't give me money, I am going to cut you." I do not recall him saying anything to any other effect about the knife.

Q. All right. Isn't it a fact that all he said to you was, "Give me a dime," and you said, "I don't have one."?

A. No, sir.

Q. That is not a fact? Did you not testify at the preliminary hearing that he asked you for a quarter?

A. I don't recall. It is possible that I testified to that. I do recall that I testified at the preliminary hearing that, after he asked me for the quarter and after he pulled out the knife, he walked off. I do not recall testifying he didn't threaten me with the knife. It is possible that I testified that way.

\*     \*     \*     \*     \*

"When I saw this group of people, I pointed to the group and said 'Mr. Coggins, there, that is them,' and then I said, "And the one in the brown jacket is the one that had the knife pulled on me." This person was in the middle, toward the back sort of, of the group. I did not say anything to the group after I told Mr. Coggins that. I did not help search the group. I stood on the opposite side of the hall. When they were told to stop, they did stop. They did not try to run, except as they were coming down the hall, before Mr. Coggins stopped them, the one who had pulled the knife on me did hesitate and start to turn around and then turned back around.

Q. What do you mean he looked around over his shoulder. Is that what you say?

MR. SAUNDERS: OBJECTION. HE STATED WHAT HE MEANT.

COURT: SUSTAINED. EXCEPTION NO. 8.

Q. When you say 'hesitated', what do you mean? I don't quite understand this. Clarify it for me, if you would.

A. They were coming down the hall, and the one who pulled the knife on me I am going to refer to him as Terry. Terry is coming down the hall and when he sees me point out the group and point in his direction, he went like this and then he turned back around and came on. I was from here maybe to the back of the courtroom when I pointed at this group. This was when the person hestitated."

Although it is axiomatic that a wide latitude is allowed in cross-examination, and this is particularly true as to cross-examination of the State's witnesses in a criminal case, it is also "the well recognized rule that the latitude of cross-examination rests largely in the trial court's discretion." *State v. Robinson*, 280 N.C. 718, 720, 187 S.E. 2d 20, 21 (1972). From examination of the above quoted portion of the record, it is readily apparent that defendant's right to cross-examine the witness against him was not unduly limited and that the court did not abuse its discretion.

[4] Finally, defendant contends the trial court committed error by denying his motion for mistrial after the polling of the jury. After the verdict was returned, defendant exercised his right by timely motion to have the jury polled to determine whether the verdict was unanimous. Although one juror did comment on certain aspects of the evidence when she was polled, she replied in the affirmative in every instance when asked by the judge if her verdict was guilty of attempted common law robbery. We find no error. See, *Sheppard v. Andrews*, 7 N.C. App. 517, 173 S.E. 2d 67 (1970).

No error.

Judges HEDRICK and ARNOLD concur.