STATE OF NORTH CAROLINA v. RODNEY WILLIAM ROWLAND

No. 8726SC744

(Filed 5 April 1988)

**1. Assault and Battery § 5.3; Robbery § 5.2— attempted armed robbery—assault with a deadly weapon not lesser-included offense**

The trial court did not err in a prosecution for attempted armed robbery by refusing defendant's requested instruction on assault with a deadly weapon because the offense of assault with a deadly weapon is not a lesser-included offense of attempted armed robbery. Fear is an essential element of assault with a deadly weapon but is not an inherent, essential element of attempted armed robbery.

**2. Robbery § 5.4— attempted armed robbery—instruction on attempted common law robbery refused—no error**

The trial court did not err in a prosecution for attempted armed robbery with a pocketknife by not instructing the jury on attempted common law robbery where the detailed description of the knife and the uncontradicted evidence of its use compels a finding that it was a dangerous weapon.

**3. Criminal Law § 85.3— attempted armed robbery—cross-examination regarding drug addiction—prejudicial error**

The trial court erred in a prosecution for attempted armed robbery by allowing the prosecution to cross-examine defendant regarding his addiction to cocaine. The evidence was improper under N.C.G.S. § 8C-1, Rule 608(b) because extrinsic evidence of drug addiction, standing alone, is not probative of defendant's character for truthfulness or untruthfulness; the evidence is not admissible under N.C.G.S. § 8C-1, Rule 404(b) because it was not relevant and because it did not show that defendant had a drug addiction in proximity to the date of the crime; and there was prejudice because the case turned on a question of credibility. N.C.G.S. § 15A-1443(a).

APPEAL by defendant from *Gray, Judge.* Judgment entered 12 March 1987 in Superior Court, MECKLENBURG County. Heard in the Court of Appeals 13 January 1988.

Defendant was tried and convicted upon a bill of indictment charging him with the offense of attempted robbery with a dangerous weapon. From the imposition of a sentence of fourteen years imprisonment defendant appeals.

*Attorney General Lacy H. Thornburg, by Assistant Attorney General David R. Minges, for the State.*

*Public Defender Isabel Scott Day, by Assistant Public Defender Marc D. Towler, for defendant appellant.*

JOHNSON, Judge.

The State presented evidence which tended to show the following: Between 9:30 and 10:00 p.m., Friday, 25 April 1986, David DeStefani was driving his vehicle in the one hundred block of Church Street of downtown Charlotte. As he proceeded through the intersection of Church and Trade Streets, defendant, who was walking across the street, hit his backpack against the rear quarter panel of DeStefani's car. DeStefani pulled his car over, got out, walked toward defendant, and asked defendant if there was a problem. Defendant responded that there was a problem and asked DeStefani for either his wallet or his money. DeStefani became scared and stepped back. Defendant then pulled a pocket-knife five to five and one-half inches long with a two and one-half to three inch blade. Defendant held the knife in his right hand with the knife open and the blade up, moved toward DeStefani and said, "Give me your wallet." Defendant reached around DeStefani with his left hand for DeStefani's wallet. DeStefani grabbed defendant's left arm and a struggle ensued. During the struggle two of DeStefani's friends drove up, stopped and asked if everything was all right. Defendant responded, "No, I'm going to kill him." DeStefani's friends then drove further down the street and stopped. Defendant then told DeStefani, "You better give me your money or I'm going to cut you anyway." Defendant closed the knife and put it in his pocket. As the struggle continued, DeStefani managed to remove the knife from defendant's pocket, opened it and told defendant to stand back. Defendant responded by reaching for his backpack and saying that he had a gun in it and he was going to shoot DeStefani. As defendant opened the backpack, DeStefani closed the knife, threw it away and started for his car. Defendant struck him twice about the face and again

threatened to shoot him. DeStefani managed to get into his car and drive down the street to where his friends had pulled over. He told them defendant did not get his wallet or cut him. DeStefani did not report the incident to the police because he was all right, defendant did not get his money and he "figured" the police would not catch defendant because defendant "took off."

On Sunday afternoon, 27 April 1986, DeStefani was in downtown Charlotte at the Springfest when he noticed defendant standing on a corner. DeStefani approached two officers and told them that defendant had tried to rob him on Friday night. The officers approached defendant and confronted him with DeStefani's accusations. Defendant denied any knowledge of the incident and said that he was working Friday night.

Defendant testified in his own behalf to the following: That on the night in question, he was at the intersection of Church and Trade Streets in downtown Charlotte, waiting to cross the street, and when the signal indicated "walk," he began crossing the street at which time the car driven by DeStefani almost hit him. He hit the back of the car with his hand, and the car pulled over to the side suddenly. DeStefani "jumped out" of the car like he wanted to fight and said, "What's your problem?" He became scared and pulled out his pocketknife as DeStefani approached him because DeStefani was twice his size. DeStefani grabbed his arm and spun him around. As they struggled, he closed the knife and put it in his pocket and told DeStefani to "stop, forget it." DeStefani reached into defendant's pocket, grabbed the knife, opened it and threw it into the street. DeStefani shoved him and he slapped DeStefani. During the struggle defendant told DeStefani he was going to kill him only because he was mad and DeStefani almost hit him as he was crossing the street. In addition, defendant stated that he had no intention of actually killing him. Defendant denied having a gun, or asking or reaching for DeStefani's money or wallet, or saying anything about robbing or shooting him. Defendant's description of the knife is as follows: "the blade on it was probably two and one half or three inches long, opened probably five and one half inches long, and a real skinny blade, maybe a half an inch thick. It was like a whittling knife like you whittle, you know, with wood, like a carving knife, . . ."

[1]  By his first Assignment of Error, defendant contends the trial court erred in failing to give defendant's requested instruction on assault with a deadly weapon. Defendant preserved his right to assign as error this omission by properly objecting at trial. Rule 10(b)(2), N.C. Rules of App. P.

The State contends that assault with a deadly weapon is not a lesser included offense of attempted armed robbery; therefore, the State argues, the trial court was not required to instruct on the offense of assault with a deadly weapon even if there was evidence from which the lesser crime could be found.

It is clear from the evidence of this case that there was evidence from which the lesser crime could be found. Although the State presented evidence which tended to show that defendant, armed with a pocketknife, threatened to cut and kill DeStefani if DeStefani did not give him his wallet and money, and that the attack and robbery were thwarted by DeStefani's grabbing defendant's hand, defendant testified that he drew the knife on DeStefani and threatened to kill him, but never requested or demanded DeStefani's wallet or money. From defendant's testimony, the lesser crime of assault with a deadly weapon could be found.

If the offense of assault with a deadly weapon is a lesser included offense of attempted armed robbery, then the trial court was required to give defendant's requested instruction. For it is a well established rule in this jurisdiction that:

> [w]hen there is conflicting evidence of the essential elements of the greater crime and evidence of a lesser included offense, the trial judge must instruct on the lesser included offense. . . .

*State v. Odom*, 307 N.C. 655, 659, 300 S.E. 2d 375, 378 (1983) (*quoting State v. Brown*, 300 N.C. 41, 50, 265 S.E. 2d 191, 197 (1980) ). *See also State v. Bell*, 284 N.C. 416, 200 S.E. 2d 601 (1973).

In *State v. Weaver*, 306 N.C. 629, 635, 295 S.E. 2d 375, 378-79 (1982), our Supreme Court held that:

> [T]he facts of a particular case should [not] determine whether one crime is a lesser included offense of another. Rather, the *definitions* accorded the crimes determine wheth-

er one offense is a lesser included offense of another crime. (Citation omitted.) In other words, all of the essential elements of the lesser crime must also be essential elements included in the greater crime. If the lesser crime has an essential element which is not completely covered by the greater crime, it is not a lesser included offense. The determination is made on a *definitional*, not a factual basis.

The essential elements of attempted armed robbery, as set forth in G.S. sec. 14-87(a), are:

(1) the unlawful attempted taking of personal property from another;

(2) the possession, use or threatened use of a firearm or other dangerous weapon, implement or means; and

(3) danger or threat to the life of the victim.

*See also, State v. Torbit*, 77 N.C. App. 816, 336 S.E. 2d 122 (1985).

Attempted armed robbery occurs when the defendant, with the requisite intent to rob, does some overt act calculated toward unlawfully depriving another of his personal property by endangering or threatening his life with a dangerous weapon. *State v. Irwin*, 304 N.C. 93, 282 S.E. 2d 439 (1981); *State v. Price*, 280 N.C. 154, 184 S.E. 2d 866 (1971). The overt act done towards unlawfully depriving another of his personal property must be beyond mere preparation, but falling short of completion. *State v. Powell*, 277 N.C. 672, 178 S.E. 2d 417 (1971).

The essential elements of an assault with a deadly weapon are:

(1) The assault of a person;

(2) With the use of a deadly weapon.

G.S. sec. 14-33.

The word assault has been defined as an overt act or attempt, with force and violence, to do some immediate physical injury to the person of another, which show of force or violence must be sufficient to put a person of reasonable firmness in fear of immediate physical injury. *State v. Roberts*, 270 N.C. 655, 155 S.E. 2d 303 (1967).

While we are cognizant of cases of this Court which have held that assault with a deadly weapon is a lesser included offense of attempted armed robbery, *see*, *State v. Sanders*, 29 N.C. App. 662, 225 S.E. 2d 620 (1976); *State v. Blackmon*, 28 N.C. App. 255, 220 S.E. 2d 850 (1976); *State v. Harris*, 27 N.C. App. 520, 219 S.E. 2d 538 (1975), these cases were decided before our Supreme Court adopted the *definitional* test in *Weaver, supra*, as the formula to be used in determining whether one offense is a lesser included offense of another crime.

Applying the *definitional* test set forth in *Weaver*, we are of the opinion that the offense of assault with a deadly weapon is not a lesser included offense of attempted armed robbery. The only inherent, essential element common to both offenses, attempted armed robbery and assault with a deadly weapon, is the element of the use of a dangerous weapon. Fear, a reasonable apprehension on the part of the victim of immediate bodily harm or injury, is an essential element of the offense of assault with a deadly weapon but is not an inherent, essential element of attempted armed robbery. In other words, to prove the crime of attempted armed robbery, the State does not necessarily have to prove that an assault occurred. On the other hand, to prove an assault with a deadly weapon the State must show as an essential element that an *assault* occurred. Fear is an essential element of assault with a deadly weapon which is not completely covered by the greater crime of attempted armed robbery. Therefore, under the *definitional* test of *Weaver*, assault with a deadly weapon is not a lesser included crime of attempted armed robbery. The trial court was correct in not giving defendant's requested instruction.

[2] Next, defendant contends the court erred in its denial of defendant's request for an instruction on the lesser included offense of attempted common law robbery.

The court is required to give an instruction as to an included crime of lesser degree than charged, when and only when there is evidence from which the jury could find that such included crime of lesser degree was committed, and the presence of such evidence is the determinative factor. However, there is no requirement to submit the lesser included offense to the jury when there is no evidence to sustain a verdict of defendant's guilt of such lesser offense. *State v. Bailey*, 278 N.C. 80, 178 S.E. 2d 809 (1971),

*cert. denied*, 409 U.S. 948, 93 S.Ct. 293, 34 L.Ed. 2d 218 (1972); *State v. Allen*, 47 N.C. App. 482, 267 S.E. 2d 514 (1980); *State v. Black*, 21 N.C. App. 640, 205 S.E. 2d 154, *aff'd*, 286 N.C. 191, 209 S.E. 2d 458 (1974). Attempted common law robbery is a lesser included offense of attempted armed robbery.

As we have previously stated, the essential elements of attempted armed robbery are the attempted taking of personal property from another by force or intimidation, occasioned by the use or threatened use of a weapon; *State v. Owens*, 277 N.C. 697, 178 S.E. 2d 442 (1971); while the essential elements of attempted common law robbery are the attempted taking of personal property of another by violence or intimidation. G.S. sec. 14-87(a); *State v. Smith*, 268 N.C. 167, 150 S.E. 2d 194 (1966). All of the essential elements of attempted common law robbery are covered by the greater crime of attempted armed robbery.

Defendant argues that the evidence did not compel a finding that the pocketknife was a dangerous weapon *per se*, and that since the court did not so find it to be a dangerous weapon as a matter of law, and submitted the question to the jury as to whether it was a dangerous weapon, the court should have instructed the jury on the lesser included offense of attempted common law robbery. We disagree.

Defendant relies primarily upon this Court's holding in *State v. Jackson*, 85 N.C. App. 531, 355 S.E. 2d 224 (1987). In *Jackson*, defendant was charged with robbery with a dangerous weapon and was convicted of attempted armed robbery. The evidence showed that defendant pulled a hammer on a police officer, held it in a threatening manner, and said, "You'd better give me $15, man." The hammer was identified and admitted into evidence. The court did not find the hammer to be a dangerous weapon as a matter of law, but submitted it to the jury as a question of fact. The court did not instruct the jury on the lesser included offense of common law robbery. This Court held that the trial court erred in not instructing on the lesser included offense since the court did not find the hammer to be a dangerous weapon as a matter of law; and "[t]he evidence in the present case did not compel a finding that the hammer was a dangerous weapon." *Id.* at 532, 355 S.E. 2d at 225. We find *Jackson* distinguishable from the case *sub*

*judice.* In the instant case we believe the evidence compelled a finding that the knife was a dangerous weapon as a matter of law.

The pocketknife was described in detail by evidence presented by both the State and defendant. The State's evidence showed the pocketknife to be approximately five to five and one half inches long with a two and one half to three inch blade. Defendant described it as approximately five and one half inches long opened, with the blade approximately two and one half to three inches long and one half inch thick. Although defendant denied demanding or requesting any of the victim's personal property, all of the evidence shows that defendant threatened to cut and kill the victim. The State's evidence also shows that defendant held the knife in his right hand with the blade open and up, and reached around the victim with his left hand.

We find similarities between this case and *State v. Fletcher*, 264 N.C. 482, 141 S.E. 2d 873 (1965) (per curiam). In *Fletcher*, defendant was indicted for armed robbery. The State's evidence showed that defendant approached the victim, pulled a knife, opened a blade two to three inches long and said, "I want to see your pocketbook." While holding the knife in his right hand, defendant reached around the victim with his left hand for the victim's wallet. Defendant offered no evidence. Defendant was convicted of armed robbery. In finding no error, the Court held that the evidence did not entitle defendant to an instruction on the lesser included offense of common law robbery; that the evidence "restricted the jury to two verdicts: guilty of robbery with a dangerous weapon, i.e., a knife, or not guilty." *Id.* at 485, 141 S.E. 2d at 875.

In the case *sub judice*, as in *Fletcher*, the knife was described in detail and there is only one version as to how the knife was used. The evidence is uncontradicted that defendant held the knife with the blade opened and threatened to cut and kill DeStefani with it. Where the weapon is described in detail or is introduced into evidence and the manner of its use is of such character as to admit but one conclusion, the question of whether it is a dangerous weapon is a question of law. *See, State v. Torain*, 316 N.C. 111, 340 S.E. 2d 465, *cert. denied*, 107 S.Ct. 133, 93 L.Ed. 2d 77 (1986); *State v. Wiggins*, 78 N.C. App. 405, 337 S.E.

2d 198 (1985); *State v. Parker*, 7 N.C. App. 191, 171 S.E. 2d 665 (1970).

The detailed description of the knife in the instant case and the uncontradicted evidence of its use compels a finding that it was a dangerous weapon. The trial court could properly have found it to be a dangerous weapon as a matter of law. Nonetheless, having failed to do so, the error was harmless, because by leaving the question to the jury as a question of fact, the court placed a higher burden upon the State. This was in fact advantageous to defendant. *Torain, supra*. Based upon the evidence in the instant case, defendant was not entitled to have the court instruct the jury on attempted common law robbery. Defendant was either guilty of attempting to rob DeStefani of his wallet and money by the threatened use of a knife five and one-half to nine inches long and a blade one and one-half to three inches long, or not guilty.

[3] By his third and final Assignment of Error, defendant contends the trial court erred in allowing the State, over defendant's objection, to cross-examine defendant regarding his addiction to cocaine.

During cross-examination of the defendant at trial, the following exchange took place:

Q. Mr. Rowland, you've got a serious addiction to cocaine, don't you?

MR. CONRAD: OBJECTION, Your Honor, that's improper and that's irrelevant.

COURT: Approach the bench.

(Conference at the bench)

COURT: Objection is OVERRULED.

Q. Isn't that true, Mr. Rowland?

A. No, it's not.

Q. You do not have a drug problem?

A. No, I don't.

Q. You have not been in drug treatment, at least two drug treatment centers in the last eight months?

A. No.

Q. You have not been in McCloud Center here in Charlotte for drug treatment?

A. Yes, I have.

Q. And you have been in a drug treatment center the early part, I believe it was 19—late part of last year in Atlanta in a drug treatment center?

A. I wasn't in a drug treatment center, no.

Q. But you were treated for drug treatment—drug addiction?

A. I was here in Charlotte.

Q. And down in Atlanta?

A. No, I wasn't in Atlanta.

Thus, the trial court allowed the State to cross-examine defendant about prior "extrinsic conduct evidence" which refers to evidence of a specific prior or subsequent act, not charged in the indictment which may or may not be criminal. *State v. Morgan*, 315 N.C. 626, 340 S.E. 2d 84 (1986).

As in *Morgan*, defendant here argues that the questions were improper under G.S. sec. 8C-1, Rule 608(b) (evidence of specific instances of conduct for the purpose of proving credibility of witness or lack thereof). The State argues that the evidence was properly admitted pursuant to Rule 608(b) as well as Rule 404(b) (evidence of specific instances of a party's conduct for the purpose of proving motive, opportunity, etc.).

Rule 608(b) provides:

(b) *Specific instances of conduct.*—Specific instances of the conduct of a witness, for the purpose of attacking or supporting his credibility, other than conviction of crime as provided in Rule 609, may not be proved by extrinsic evidence. They may, however, in the discretion of the court, if probative of truthfulness or untruthfulness, be inquired into on cross-examination of the witness (1) concerning his character for truthfulness or untruthfulness, or (2) concerning the character for truthfulness or untruthfulness of another witness as

to which character the witness being cross-examined has testified.

> The giving of testimony, whether by an accused or by any other witness, does not operate as a waiver of his privilege against self-incrimination when examined with respect to matters which relate only to credibility.

G.S. sec. 8C-1, Rule 608(b).

In that "the only purpose for which . . . evidence [under Rule 608(b)] is sought to be admitted is to impeach or to bolster the credibility of a witness, the only character trait relevant to the issue of credibility is veracity or the lack of it." *Morgan at 634, 340 S.E. 2d at 90.* The *Morgan* Court also stated that "evidence routinely disapproved as irrelevant to the question of a witness' general veracity (credibility) includes specific instances of conduct relating to 'sexual relationships or proclivities, the bearing of illigitimate [sic] children, *the use of drugs* or alcohol, . . . or violence against other persons.'" (Emphasis added.) *Id.* at 635, 340 S.E. 2d at 90.

We, therefore, conclude that the cross-examination complained of in the instant case concerning defendant's drug addiction was improper under Rule 608(b) because extrinsic evidence of drug addiction, standing alone, is not probative of defendant's character for truthfulness or untruthfulness.

The State also contends the evidence was admissible under Rule 404(b) to show motive for the attempted armed robbery and to test defendant's recollection and ability to perceive the underlying events of the crime (evidence of specific instances of conduct for the purpose of proving character of the accused to show motive, opportunity, etc.). Rule 404(b) provides:

> (b) *Other crimes, wrongs, or acts.*—Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake, entrapment or accident.

G.S. sec. 8C-1, Rule 404(b).

Before extrinsic conduct evidence is admissible pursuant to Rule 404(b), the trial court is required to *first*, determine whether conduct is being offered pursuant to Rule 404(b); *second*, the trial court is required to make a determination of the evidence's relevancy. "If the trial judge makes the initial determination that the evidence is of the type and offered for the proper purpose under Rule 404(b), the record should so reflect." *Morgan*, 315 N.C. at 637, 340 S.E. 2d at 91. The trial judge in the instant case made no such determination.

Rule 401 defines relevant evidence as:

"Relevant evidence" means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence.

G.S. sec. 8C-1, Rule 401.

We perceive no relevancy for the admission of the complained of evidence regarding defendant's drug addiction. Furthermore, this evidence does not show that defendant had a drug addiction in proximity to the date of the crime. It was error for the trial court to allow this evidence in over defendant's objection.

DeStefani contends that defendant pulled the knife on him and threatened to cut and kill him if he did not give defendant his wallet and money. Defendant testified that he pulled the knife on DeStefani and threatened to cut and kill him *only* because he was mad, as DeStefani almost ran over him as he was crossing the street, and that DeStefani jumped out the car as if he wanted to fight; not because he attempted to rob DeStefani. The State's case would stand or fall on this evidence. It became a question of credibility for the jury as to what evidence to believe. We cannot say that there is no "reasonable possibility that, had this error in question not been committed," the jury would have reached a different verdict. G.S. sec. 15A-1443(a). It is at least reasonably possible that the jury considered this evidence of defendant's drug addiction in the manner that the State argued that it should be viewed, and rejected defendant's contention that he, although having admitted pulling the knife and threatening to cut and kill

DeStefani, did not attempt to rob DeStefani. The error was, therefore, prejudicial.

We, therefore, award defendant a

New trial.

Judges PHILLIPS and ORR concur.