HUNTER, Judge.
Thomas Alexander Terry ("defendant") appeals his conviction for assault with a deadly weapon inflicting serious injury. Finding no error, we affirm the trial court's judgment.
Complainant Laynerd Dever Staley ("Staley") testified that he had known defendant "[b]asically all of his life." In the summer of 2002, defendant asked Staley to hold onto defendant's nine millimeter handgun. After taking custody of the gun, Staley sold it without defendant's permission. When defendant subsequently asked him to return the gun on five or six occasions, Staley "avoid[ed] taking it to him." On 7 December 2002, Staley saw defendant on Ferndale Street sitting with two men in his red Lincoln Navigator. Defendant exited his vehicle, placed Staley in a choke-hold, and jabbed a pocketnife or other sharp object into the side of his head. After asking where his gun was, defendant knocked Staley to the ground, struck him ten to twelve times with his hands and beat him in the head with a block of ice "[u]ntil the ice . . . broke[.]" One of his two associates then brought defendant a "miniature sword" from his vehicle. Staley described the sword as "at least two feet long" with a blade the approximate width of his finger.
Defendant removed the sword from its case, raised it into the air, and brought it "straight down toward [Staley's] throat." Believing his "life was about to come to an end[,]" Staley parried the sword with his hand, "and the blade slashed all the meat" from his thumb. After forcing Staley's arm downward, defendant ran the blade of the sword through Staley's left palm and into the ground. With Staley's hand pinned to the ground, defendant kicked him for "about ten minutes" before removing the sword. When Staley tried to walk away, defendant again knocked him to the ground and kicked him until his associates intervened. As Staley stood up, defendant told him, "I want my damn gun." Staley walked back to his house before passing out in the kitchen. After being revived by his mother, he called the police.
Staley was taken by ambulance to the hospital where he stayed for approximately eight hours. He returned to the hospital the following day and remained for three and one-half days with an infection in his hand and arm. At the time of trial, Staley was experiencing "tremendous pain" in his elbow as well as pain in his left hand. He had scars on his left thumb and palm, was unable to straighten two fingers on his left hand, and believed he would "never be able to have full use of it again."
Winston-Salem Police Officer Steven Davis ("Davis") interviewed Staley at his house immediately following the assault on 7 December 2002. When Davis arrived at the residence, Staley "was holding a washcloth and towel around his hand and there was profuse blood just everywhere." Davis gave the following account of Staley's statement:
He said that [defendant] had stabbed him. He said the stab was through his left hand, which was agreeing with . . . all the blood from his left hand. He described it, the weapon, as a mini sword. He held his hands apart and showed me and it was . . . approximately 16 inches. . . .
In addition to providing defendant's name and description, Staley gave Davis the license tag number of defendant's red Navigator. Davis arrested defendant after spotting his vehicle at a gas station on the 100 block of North Martin Luther King, Jr. Drive. Asked about Staley, defendant told Davis, "I kicked his ass." Defendant's pants and boots were stained with blood.
On 10 September 2003, Staley signed a letter stating that defendant "was not the man that assaulted me on December the 7th." Staley wrote the letter after defendant confronted him on the street and told him to "tell them I wasn't the one that done it or do something because I can't be going to jail for this." Staley complied with the request, because he was afraid of defendant and "wanted all this to just be over with."
On appeal, defendant first challenges the trial court's denial of his motion to dismiss at the conclusion of the evidence. In reviewing the denial of a motion to dismiss, we must examine the evidence in the light most favorable to the State to determine if there is substantial evidence of the element of the offense charged and of defendant's identity as the perpetrator. See State v. Jacobs, 128 N.C. App. 559, 563, 495 S.E.2d 757, 760-61, disc. review denied, 348 N.C. 506, 510 S.E.2d 665 (1998). "Substantial evidence" has been defined as that which would permit a rational juror to be persuaded of a fact at issue beyond a reasonable doubt. State v. Scott, 356 N.C. 591, 597, 573 S.E.2d 866, 869 (2002) (citing State v. Mann, 355 N.C. 294, 301, 560 S.E.2d 776, 781, cert. denied, 537 U.S. 1005, 154 L. Ed. 2d 403 (2002)). For purposes of our review, conflicts between witnesses or other contradictions in the evidence are matters properly left to the jury. Id. at 596, 573 S.E.2d at 869 (citing State v. Benson, 331 N.C. 537, 544, 417 S.E.2d 756, 761 (1992)). "In addition, the defendant's evidence should be disregarded unless it is favorable to the State or does not conflict with the State's evidence." Id. (citing State v. Earnhardt, 307 N.C. 62, 67, 296 S.E.2d 649, 653 (1982)).
"The essential elements of the charge of assault with a deadly weapon inflicting serious injury are (1) an assault (2) with a deadly weapon (3) inflicting serious injury (4) not resulting in death." State v. McCree, 160 N.C. App. 200, 205-06, 584 S.E.2d 861, 865 (2003) (citing N.C. Gen. Stat. § 14-32(b) (2001); State v. Woods, 126 N.C. App. 581, 592, 486 S.E.2d 255, 261 (1997)). Defendant does not contest the evidence that Staley was the victim of an assault in which he received a serious, non-fatal injury. Instead, defendant argues that the evidence was insufficient to show that he "was the one who inflicted Mr. Staley's injuries or that the mini sword was a deadly weapon as it was used[.]" A deadly weapon "is generally defined as any article, instrument or substance which is likely to produce death or great bodily harm." State v. Sturdivant, 304 N.C. 293, 301, 283 S.E.2d 719, 725 (1981).
We find defendant's claim without merit. The State adduced substantial evidence of defendant's responsibility for the assault. Staley testified that he had known defendant his entire life, identified defendant by name as his attacker, and described the entire course of defendant's assault upon him. This evidence was corroborated by Staley's and defendant's statements to Davis soon after the assault, and by the blood found on defendant's clothing. Moreover, a reasonable juror could find that a "miniature sword" between sixteen inches and two feet in length and sharp enough to cut the flesh from Staley's thumb and pass completely through his hand into the ground qualified as a deadly weapon. Indeed, our courts have routinely found knives significantly smaller than the weapon in this case to be deadly weapons as a matter of law. See, e.g., State v. Torain, 316 N.C. 111, 122, 340 S.E.2d 465, 471 (upholding peremptory instruction that "' a utility knife is a dangerous or deadly weapon'") (citation omitted), cert. denied, 479 U.S. 836, 93 L. Ed. 2d 77 (1986); State v. Rowland, 89 N.C. App. 372, 380, 366 S.E.2d 550, 554 (1988) (finding "a knife five and one-half to nine inches long and a blade one and one-half to three inches long" to be a deadly weapon per se). Equally unavailing is defendant's claim that the sword was not used as a deadly weapon. In addition to the injuries to Staley's hand and the "profuse" bleeding described by Davis, the evidence showed that defendant raised the sword into the air and brought it "straight down toward [Staley's] throat." See generally State v. Peacock, 313 N.C. 554, 563, 330 S.E.2d 190, 196 (1985) (assessing weapon's deadliness by "the nature of the instrument, the manner in which defendant used it or threatened to use it, and in some cases the victim's perception of the instrument and its use").
Defendant also claims the trial court committed plain error by omitting the word "innocence" from the pattern jury instruction on motive. 1 N.C.P.I. Crim. 104.10 (Repl. March 1986). The full pattern instruction reads as follows:
Proof of motive for the crime is permissible and often valuable, but never essential for conviction. If you are convinced beyond a reasonable doubt that the defendant committed the crime[,] the presence or absence of motive is immaterial. Motive may be shown by facts surrounding the act if they support a reasonable inference of motive. When thus proved, motive becomes a circumstance to be considered by you. The absence of motive is equally a circumstance to be considered on the side of innocence.
Id. (emphasis added). The transcript reflects that the final word either was not read to the jury or was inaudible to the court reporter. In light of the incomplete instruction, defendant avers, "[t]he jury [wa]s left with no instructions on what to do if there [wa]s an absence of motive." Had it known that his lack of motive could be viewed as evidence of his innocence, defendant asserts that "the jury would likely have reached a different result[.]"
Because defendant raised no objection at trial, the court's instruction is reviewed only for plain error. See State v. Reid, 335 N.C. 647, 667, 440 S.E.2d 776, 787 (1994) (citing State v. Odom, 307 N.C. 655, 300 S.E.2d 375 (1983)). In order to show plain error, the defendant must demonstrate to this Court "(i) that a different result probably would have been reached but for the error or (ii) that the error was so fundamental as to result in a miscarriage of justice or denial of a fair trial." State v. Bishop, 346 N.C. 365, 385, 488 S.E.2d 769, 779 (1997), (citing State v. Bagley, 321 N.C. 201, 213, 362 S.E.2d 244, 251 (1987), cert. denied, 485 U.S. 1036, 99 L. Ed. 2d 912 (1988)).
We find no plain error here. The trial court's omission was, at worst, a lapsus linguae which neither misled the jury nor had any likely effect on its verdict. See State v. Andrews, 131 N.C. App. 370, 376, 507 S.E.2d 305, 309 (1998) (finding no plain error where the trial court mistakenly "said 'lack of provocation by the defendant' rather than `lack of provocation by the victim' in the jury instructions"), disc. review denied, 350 N.C. 100, 533 S.E.2d 471 (1999); accord State v. Reid, 335 N.C. at 667, 440 S.E.2d at 787. We note that the State adduced affirmative evidence of defendant's motive for the assault, i.e., his displeasure with Staley's failure to return his gun.
The record on appeal contains additional assignments of error not addressed by defendant in his brief to this court. Pursuant to N.C.R. App. P. 28(b)(6), we deem them abandoned.
No error.
Judges ELMORE and STEELMAN concur.
Report per Rule 30(e).